**Debbie BETTERTON, Individually, and as surviving spouse and on behalf of all of the next of kin and the wrongful death beneficiaries of David Lee Betterton, Deceased, Plaintiff,**

v.

**Edward Morgan EVANS, M.D., Guidant Sales Corporation, and Cardiac Pacemaker, Inc., Defendants.**

**No. CIV.A.2:02 CV 318–P–.**

United States District Court,
N.D. Mississippi,
Delta Division.

Dec. 10, 2004.

Troy Allen Poetz, Neely, Green, Fargarson & Brooke, Richard D. Underwood, Underwood/Thomas, PC, Memphis, TN, for Plaintiff.

Dawn Davis Carson, Heaton and Moore, PC, Kari Louise Foster, Butler, Snow, O'Mara, Stevens & Cannada, PLLC, Albert C. Harvey, Thomason, Hendrix, Harvey, Johnson & Mitchell, Memphis, TN, Shelby Duke Goza, Hickman, Goza & Spragins, PLLC, Robert S. Mink, Holcomb Dunbar, Oxford, MS, for Defendants.

## MEMORANDUM OPINION

PEPPER, District Judge.

This cause comes before the court upon Cardiac Pacemaker, Inc. and Guidant Sales Corporation's Motion for Summary Judgment on All Counts [70–1]. Upon exhaustive consideration of the motion and the responses thereto the court is prepared to rule.

### I. FACTUAL BACKGROUND [1]

On August 1, 2002 David Lee Betterton was brought to Baptist Memorial Hospital in Southaven, Mississippi for chest and arm pain. The attending ER physician [2] ordered x-rays and administered diagnostic tests and medications. The x-rays revealed that Betterton had an enlarged heart. The ER physician then consulted Betterton's cardiologist [3] who in turn admitted Betterton to the hospital. On that same day, the cardiologist diagnosed Betterton with an abnormal heart rhythm. Based on this finding and continued complaints, the cardiologist ordered a cardiac catheterization.

On the next day, August 2, 2002, another cardiologist [4] performed the cardiac catheterization. This physician diagnosed Betterton with low-grade lesions in the proximal right coronary artery, distal right coronary artery, and left anterior descending artery. Consequently, this physician

---

1. Because Rule 56 requires the facts to be viewed in a light most favorable to the non-movant, the factual background draws heavily from the Complaint.

2. Robert E. Turner, M.D., originally named as a defendant in this action but voluntarily dismissed on August 18, 2004.

3. Todd D. Edwards, M.D., originally named as a defendant but voluntarily dismissed on March 27, 2004.

4. Larry B. Spiotta, M.D., another defendant voluntarily dismissed on March 27, 2002.

performed a stinting of the right coronary artery.

Four days later on August 6, 2002, Edward M. Evans, M.D., performed additional surgery on Mr. Betterton during which Dr. Evans implanted a pacemaker system comprised of the Guidant Model 1298 Insignia 1 + DR pulse generator, serial number 101044, and two Guidant FINELINE II arterial leads: Model 4459 FINELINE II ventricular lead, serial number 305189 and Model 4479 FINELINE II atrial lead, serial number 301247. In other words, a pulse generator and two electric leads made up the pacemaker system installed inside Mr. Betterton.

A few hours after implantation, the Guidant representative, Amy Roys, was called to the hospital due to inadequate performance of the pacemaker and leads.

On August 7, 2002, Roys checked the pacemaker leads and allegedly concluded that the pulse generator and the leads were providing inadequate voltage. Chest x-rays showed that Betterton's heart was still enlarged. Dr. Evans operated once again, reopening the implant site but failing to reposition the pacemaker leads. After several more unsuccessful attempts, Dr. Evans concluded that he could not reposition the leads and removed them. The plaintiff alleges that Dr. Evans observed that the insulation on the lead wires had cracked—an allegation that is not seriously disputed by the defendants in their motion for summary judgment. Furthermore, the plaintiff avers that Betterton's anesthesia record notes "malfunctioning pacemaker," and that Dr. Evans recorded in the medical records "defective pacemaker" and that he had observed blood in the lumens (the cavity or channel within a tube) of the leads. In other words, there appears to be solid evidence suggesting that both the pulse generator and the leads comprising the pacemaker system were defective—*i.e.*, they did not function properly to effectuate their purpose.

That evening, Dr. Evans requested Dr. Bradley Wolf [5] to implant a new pacemaker system. Dr. Wolf found blood in the pericardial cavity and was unsuccessful in planting the new pacemaker. Thereafter, Betterton's condition deteriorated. He went into shock after Wolf attempted cardiopulmonary resuscitation and a thoracotomy (*i.e.*, reopening Mr. Betterton's chest). Dr. Wolf attempted to insert a balloon pump into Betterton's artery but was unsuccessful. Dr. Wolf then placed Betterton on a bypass system and inserted a bypass assistant device some time later.

Four days later, on August 11, 2002, after his condition continued to deteriorate, Mr. Betterton died.

On December 31, 2002 Debbie Betterton, individually and on behalf of her deceased husband David Lee Betterton and his wrongful-death beneficiaries, filed the instant wrongful-death action asserting negligence, breach of contract, and *res ipsa loquitur* against the treating physicians for their alleged failures to properly diagnose and treat Mr. Betterton. The plaintiff also levied several claims against Guidant Sales Corporation and Cardiac Pacemaker, Inc. for the failure of the pacemaker system. Specifically, the claims included: product liability; failure to warn;

---

**5.** Bradley Wolf, M.D. was not made a defendant to the original action filed in 2002. Rather, the plaintiff filed a separate action against Dr. Wolf on August 6, 2004. This action, Cause Number 2:04CV210–P–A, was consolidated with the instant case on November 3, 2004. The undersigned dismissed the plaintiff's claims against Dr. Wolf on December 8, 2004 after converting the defendants' Rule 12(b)(6) motion into a motion for summary judgment and granting the latter. Essentially, the plaintiff failed to comply with Mississippi Code Annotated § 15–1–36(15) in filing her suit against Dr. Wolf.

negligence; negligent training; strict liability; breach of express warranties; gross negligence; breach of implied warranty of merchantability; breach of implied warranty of fitness for a particular purpose; failure to label; breach of contract; and *res ipsa loquitur*.

On March 15, 2004 the pacemaker-company defendants, Guidant Sales Corporation and Cardiac Pacemaker, Inc.[6] filed the instant motion for summary judgment as to all of the plaintiff's claims against them—as opposed to those against the treating physicians. Essentially, the pacemaker companies argue that the Medical Device Amendments of 1976 to the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* preempt all of the state-law tort claims against them. Because the MDA does not provide private remedies when Class III medical devices (such as the subject pacemaker system) malfunction, the pacemaker companies argue that the plaintiff's claims against them are effectively barred.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id.* Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, supra,* at 322, 106 S.Ct. 2548.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc., supra,* at 255, 106 S.Ct. 2505. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wacken-*

---

**6.** Guidant Sales Corporation and Cardiac Pacemakers, Inc. noted the following in their motion and their reply:

Guidant Sales Corp ("GSC") and Cardiac Pacemakers, Inc. ("CPI") are wholly-owned subsidiaries of Guidant Corp. CPI is the manufacturer of the medical devices at issue in this case. Because GSC did not design or manufacture these devices, it is not a proper party to this suit and should be dismissed.

It appears that the plaintiff has never addressed this issue.

*hut Protective Systems,* 669 F.2d 1026, 1031 (5 Cir.1982); *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5 Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5 Cir.1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett, supra,* at 324, 106 S.Ct. 2548.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson, supra* at 248, 106 S.Ct. 2505. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id.,* at 249, 106 S.Ct. 2505. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id.,* at 251, 106 S.Ct. 2505. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.,* 574 F.2d 824, 826 (5th Cir.1978); *Schuchart & Associates v. Solo Serve Corp.,* 540 F.Supp. 928, 939 (W.D.Tex.1982).

### B. Class III Medical Devices and FDA–Approval Processes

According to the Medical Device Amendments of 1976 to the FDCA, Class III medical devices are those that either "presen[t] a potential unreasonable risk of illness or injury" or are "purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health." 21 U.S.C. § 360c(a)(1)(C). A pacemaker system is a Class III medical device. *See* 21 C.F.R. § 870.3610 (1995).

"Before a new Class III device may be introduced to the market, the manufacturer must provide the FDA with a 'reasonable assurance' that the device is both safe and effective." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 477, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (citing 21 U.S.C. § 360e(d)(2)). Furthermore, "the process of establishing this 'reasonable assurance,' which is known as the 'premarket approval,' or 'PMA' process, is a rigorous one. Manufacturers must submit detailed information regarding the safety and efficacy of their devices, which the FDA then reviews, spending an average of 1,200 hours on each submission." *Lohr,* 518 U.S. at 477, 116 S.Ct. 2240.

Thus, on the spectrum of scrutiny required and performed by the FDA to give its approval to a Class III medical device, the Premarket Approval (PMA) process is the most rigorous. On the opposite end of the scrutiny spectrum is the § 510(k) (referring to the old FDCA section number, the new one being § 360e) or "substantial equivalent" process which does not constitute official FDA approval. The Court wrote:

If the FDA concludes on the basis of the § 510(k) notification that the device is 'substantially equivalent' to a pre-existing device, it can be marketed without further regulatory analysis (at least until the FDA initiates the PMA process for the underlying pre–1976 device to which the new device is 'substantially equivalent'). The § 510(k) notification process is by no means comparable to the PMA process; in contrast to the 1,200 hours

necessary to complete a PMA review, the § 510(k) review is completed in an average of only 20 hours.

*Lohr,* 518 U.S. at 478–479, 116 S.Ct. 2240. Indeed, the majority of the Court in *Lohr* held that because the "substantial equivalent" approval process is far less rigorous than the PMA process, state-law tort claims asserted against a pacemaker company were not preempted by the Medical Device Amendments pursuant to § 360k.

Somewhere in the middle of this scrutiny spectrum (§ 510(k) versus PMA) must fall the Product Development Protocol (PDP) process through which the subject Model 1298 Insignia pulse generator was approved by the FDA[7]. On March 20, 2002 the FDA informed Defendant Cardiac Pacemaker, Inc. that it had completed its evaluation of, and was granting approval to, CPI's Model 1298 Insignia pulse generator after having successfully passed through the PDP process. This authorized CPI to begin commercial distribution of the device.

The Medical Device Amendments of 1976 requires a Product Development Protocol (PDP) applicant to provide:

(1) a description of the device and the changes which may be made in the device;

(2) a description of the preclinical trials (if any) of the device . . . ;

(3) a description of the clinical trials (if any) of the device . . . ;

(4) a description of the methods to be used in, and the facilities and controls to be used for, the manufacture, processing and, when relevant, packing and installation of the device;

(5) an identifying reference to any device;

(6) if appropriate, specimens of the labeling proposed to be used for the device;

(7) such other information relevant to the subject matter of the protocol as the Secretary with the concurrence of the appropriate panel or panels . . . may require; and

(8) a requirement for submission of progress reports and, when completed, records of the trials conducted under the protocol which records are adequate to show compliance with the protocol.

21 U.S.C. 360e(f)(3)(B)(I)-(viii).

The instant plaintiff goes to great pains to argue that the PDP process is far less rigorous than the PMA process and that it is more akin to the § 510(k) process held to prevent MDA preemption of state-law tort claims in *Medtronic, Inc. v. Lohr.* The pacemaker companies, however, argue that the PDP process is largely identical to the PMA process (with the exception that the PDP process does not *require* clinical trials—not an insignificant difference). Though the plaintiff is correct that there is an absence of binding case law equating the PDP and PMA processes, the statutory authorities provide otherwise. Title 21 U.S.C. § 360e(f)(1) provides in pertinent part:

In the case of a class III device which is required to have an approval of an application submitted under subsection (c) of this section [*i.e.,* Premarket Approval], **such device shall be considered as having such [PMA] approval** if a notice of completion of testing in accordance with a **product development protocol** approved under paragraph (4) has been declared completed under paragraph (6).

(emphasis added). There are also two FDA regulations evincing equation of the PDP and PMA approval processes. Title

---

7. The two Guidant FINELINE II leads were approved through the PMA process.

21 C.F.R. § 870.3610 ("Implantable pacemaker pulse generator") provides in subsection (c) that "Date PMA or notice of completion of a PDP is required." More importantly, and less ambiguously, § 814.19 ("Product development protocol") provides: **"A class III device for which a product development protocol has been declared completed by the FDA under this chapter will be considered to have an approved PMA."** (emphasis added).

Thus, according to the U.S. Supreme Court, the United States Code, and the Code of Federal Regulations, on the scrutiny spectrum of Class III medical device FDA approval there is the § 510(k) process on the least-rigorous end and essentially the PMA and PDP processes each occupying the rigorous end.

### C. Medical Device Amendments of 1976

The MDA provides in pertinent part that:

> [N]o State ... may establish or continue in effect with respect to a device for human use any requirement which is **different from, or in addition to,** any requirement applicable under this Act to the device, and which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act.

21 U.S.C. § 360k(a)(1)-(2); 21 C.F.R. § 808.1(b) (emphasis added).

Guidant Sales Corporation and Cardiac Pacemaker, Inc. argue in their summary-judgment motion that all of the plaintiff's state-law tort claims against them regarding the defective pulse generator and leads are preempted, and thus barred, by § 360k. As discussed above, the U.S. Supreme Court in *Lohr* held that such state-law tort claims were not preempted by § 360k when the pacemaker that was the subject of that suit only passed through the mere § 510(k) "substantial equivalent" process rather than the PMA process. However, the Fifth Circuit Court of Appeals has distinguished the holding in *Lohr* as applying only to § 510(k) devices and not those approved through the PMA process. *Martin v. Medtronic, Inc.,* 254 F.3d 573, 585 (5th Cir.2001), *cert. denied,* 534 U.S. 1078, 122 S.Ct. 807, 151 L.Ed.2d 693 (2002) Thus, in the Fifth Circuit, § 360k of the MDA preempts state-law tort claims challenging design, labeling, manufacturing, safety, and effectiveness of an FDA-approved, Class III medical devices approved through the PMA process. *Id.; Stamps v. Collagen Corp.,* 984 F.2d 1416 (5th Cir.1993), *cert. denied,* 510 U.S. 824, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993); *Lewis v. Intermedics Intraocular, Inc.,* 56 F.3d 703, 707 (5th Cir.1995).

Applied to the facts at hand, the Court of Appeals's holding in *Martin* clearly mandates the dismissal of the plaintiff's claims against the pacemaker companies with respect to the two FINELINE II leads since both of them were approved through the PMA process.

This leaves the question of whether the Model 1298 Insignia pulse generator, approved through the PDP rather than the PMA process. As outlined above, 21 U.S.C. § 360e(f)(1), and 21 C.F.R. §§ 870.3610 and § 814.19, establish that the PMA and PDP processes are to be treated synonymously. Therefore, the Court of Appeals's decision in *Martin* applies to the Model 1298 Insignia pulse generator, thus preempting and barring the plaintiff's claims regarding the pulse generator.

### III. CONCLUSION

For the reasons discussed above, the court concludes that pursuant to *Martin v. Medtronic, Inc.,* 254 F.3d 573, 585 (5th

Cir.2001), *cert. denied*, 534 U.S. 1078, 122 S.Ct. 807, 151 L.Ed.2d 693 (2002), 21 U.S.C. § 360e(f)(1), and 21 C.F.R. §§ 870.3610 and § 814.19, all of the plaintiff's claims against Guidant Sales Corporation and Cardiac Pacemaker, Inc. regarding the Guidant pacemaker at issue (Model 1298 Insignia pulse generator and the two FINELINE leads) are preempted and thus barred by 21 U.S.C. § 360k(a)(1)-(2).

The court notes its disdain for this mandatory conclusion given that "Congress enacted the Medical Device Amendments of 1976, in the words of the statute's preamble, 'to provide for the safety and effectiveness of medical devices intended for human use.'" *Medtronic v. Lohr*, 518 U.S. 470, 474, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). The evidence presented in this case to date indicates that the subject pacemaker simply did not work. A pacemaker can hardly be said to be safe and effective when it not only does not work, but also requires subjecting a patient to the agony of opening and reopening his chest because the pacemaker is malfunctioning and neither the pacemaker-company representative nor the surgeon implanting it can figure out how to make it work. In other words, the court must abide by the law which unfortunately disallows patients or their heirs a remedy when a FDA-approved Class III medical device malfunctions and ceases to be safe and effective.

Accordingly, an Order will issue forthwith,

### ORDER

In accordance with a Memorandum Opinion issued this day, **IT IS ORDERED** that:

(1) Cardiac Pacemaker, Inc. and Guidant Sales Corporation's Motion for Summary Judgment on All Counts [70–1] as to the pacemaker-company defendants is hereby **GRANTED**; accordingly,

(2) The plaintiff's claims against Cardiac Pacemaker, Inc. and Guidant Sales Corporation are **DISMISSED WITH PREJUDICE.**