# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1223

_____

Raymond C. Littrell,                            *
                                                *
                                                *   Appeal from the United States
            Plaintiff - Appellant,              *   District Court for the
                                                *   Western District of Missouri
    v.                                          *
                                                *     [PUBLISHED]
City of Kansas City, Missouri;                  *
Richard A. Dyer, Individually and               *
in his Official Capacity as Chief of            *
the KCMO Fire Dept., also known                 *
as Smokey,                                      *
                                                *
            Defendants - Appellees.             *
                                                *

_____

Submitted:  June 15, 2006
Filed: August 25, 2006

_____

Before ARNOLD and BEAM, Circuit Judges, and DOTY,[1] District Judge

_____

DOTY, District Judge.

    Raymond C. Littrell sued the City of Kansas City, Missouri ("City"), and
Richard A. Dyer, individually and in his official capacity as chief of the Kansas City

_____

    [1]The Honorable David S. Doty, United States District Judge for the District of
Minnesota, sitting by designation.

Fire Department, alleging violations of his First and Fourteenth Amendment rights and unlawful employment discrimination and retaliation under Title VII. The district court[2] granted summary judgment in favor of defendants. Plaintiff appeals and we affirm.

## I.    BACKGROUND

In 1994, the City hired Littrell as a firefighter. In 1997, he was promoted to the position of fire apparatus operator. The City hired Dyer in 2000 as director of the fire department and fire chief. From 1998 through 2002 Littrell worked primarily at Station 19. Littrell alleges that other firefighters and City employees at Station 19 violated the City's policies by openly having sex with women at the station. Other firefighters have acknowledged that the station had such a reputation. In the summer of 2002, Littrell met Jessica Niemeyer, who was not a City employee. He engaged in sexual relations with her on numerous occasions at locations including Station 19. Niemeyer periodically threatened Littrell that she would tell his wife and the fire chief about their affair. On November 2, 2002, Littrell told his wife about his relations with Niemeyer. The next day, Littrell told Battalion Chief Pat Dujakovich, then captain of Station 19, that he and other firefighters had been having sex at the station and that he refused "to be around it anymore."

Dujakovich took Littrell to meet with Ken McFarland, Treasurer of the Local 42 Chapter of the International Fire Fighters Union (the "Union"). McFarland told Littrell to keep quiet and wait to "see what happens." On November 13, Niemeyer informed Dyer that she and Littrell had been having sex at the station. She did not complain about or allege having sex with any other firefighters or City employees.

---

[2]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

Thereafter, the Union represented Littrell and negotiated an agreement with Dyer that allowed Littrell to remain employed with the City. Union President Louie Wright told Littrell that he could possibly be terminated if he did not enter the agreement. Littrell alleges that Dujakovich said the following to him on November 26, 2002: "word is [you're] going to rat everybody out . . . . You need to think about it. You better take the deal." Littrell also asserts that McFarland asked him the following: "if [you] implicate anyone or bring anyone else down, where would [you] go, where [are you] going to work?" On November 29, 2002, Littrell signed the agreement, pursuant to which he admitted to misconduct, accepted a demotion and six-month suspension and agreed to "release and discharge the Union, the KCFD, and the City from any claims, actions, suits and/or demands by me arising out of or in any way related to this matter."

Littrell's six-month suspension began on December 8, 2002, and he was demoted to probationary firefighter on December 15, 2002. On June 3, 2003, he returned from suspension and began a refresher course at the Fire Academy. After he finished the course, Littrell was assigned to Station 5 located at the Kansas City International Airport. Littrell's attorney sent a letter dated June 16, 2003, to the City, stating generally that Littrell had received threats of bodily harm. The City requested details. After numerous such requests, Littrell submitted a list on July 31, 2003, detailing five incidents that occurred between June 3 and July 27, 2003. The incidents included (1) a comment on June 5, 2003, by Captain Greg Ono from Station 19 that he would not "piss on [Littrell's] grave," (2) a statement on July 27, 2003, by a fire department employee that "there's guys out there that want to put a pick head axe through [Littrell's] head," and (3) references at various times by Ono and others that Littrell was a "rat" or "scab."

Dyer reviewed Littrell's list of incidents and determined that they did not meet the definition of a threat under the City's Violence in the Workplace Policy. In

particular, Dyer concluded that the nature of the incidents and Littrell's failure to report some of them sooner, to inquire as to who was threatening him or to contact the police indicated that Littrell did not reasonably fear for his safety. On September 19, 2003, Littrell filed a charge of discrimination with the Equal Employment Opportunity Commission.

On February 2, 2004, Littrell brought this lawsuit alleging a violation of his First Amendment right to speak on matters of public concern, a violation of his Fourteenth Amendment right to equal protection, unlawful employment discrimination based on sex and retaliation. The district court determined that the release in the agreement signed by Littrell barred his claims and granted summary judgment in favor of defendants. On appeal, Littrell contends that the release is invalid because he signed the agreement under duress and that he has alleged sufficient facts to support his claims.

## II.    DISCUSSION

We review de novo the district court's grant of summary judgment in favor of defendants. Mayer v. Nextel W. Corp., 318 F.3d 803, 806 (8th Cir.). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 252 (1986).  We view all evidence and inferences in a light most favorable to the nonmoving party.  See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

### A.     Release of Claims

A voluntary waiver of claims bars future action on such claims.  Pilon v. Univ. of Minn., 710 F.2d 466, 468 (8th Cir. 1983) (involving Title VII claims).  We presume a waiver is voluntary when the parties negotiate an unambiguous release with the assistance of counsel.  See Grant County Sav. & Loan Ass'n v. Resolution Trust Corp., 968 F.2d 722, 724-25 (8th Cir. 1992); Pilon, 710 F.2d at 468.  Under such circumstances, a party may nonetheless claim that the waiver was involuntary because it was signed under duress.  Pilon, 710 F.2d at 468.  Duress exists if, "considering all the surrounding circumstances, one party to the transaction was 'prevented from exercising his free will by the threats or wrongful conduct of the other.'"  Andes v. Albano, 853 S.W.2d 936, 942 (Mo. 1993) (quoting McCandlish v. Linker, 231 S.W.2d 162, 164 (Mo. 1950)).  Financial necessity or the threat of employment termination does not alone constitute duress.  See Schmalz v. Hardy Salt Co., 739 S.W.2d 765, 768 (Mo. Ct. App. 1987) (no duress where plaintiff had choice to preserve legal rights or be immediately discharged).

It is undisputed that the release in the agreement unambiguously applies to those claims relating to Littrell's misconduct, suspension, demotion and other such matters addressed by the agreement.  The agreement was also a result of the parties' negotiation with the assistance of legal counsel.  Littrell argues that the release is invalid, however, because he signed the agreement under duress.  To support his

argument, he points to alleged threats made by Dujakovich, McFarland and Wright.[3] The comments by McFarland and Wright only involved the possible termination of Littrell's employment, which does not constitute duress. See id. at 768. Only Dujakovich's comment to Littrell that he "better take the deal" could remotely qualify as a threat, but it was vague at best and temporally removed from the signing of the agreement. Considering all the surrounding circumstances, we conclude that no reasonable jury could find that the conduct of others prevented Littrell from exercising his free will when he signed the agreement. The district court properly determined that the release signed by Littrell was valid. On that basis, summary judgment in favor of defendants is warranted as to those claims relating to the agreement.

## B.     Claims Arising After the Release

Littrell contends that two of his First Amendment and retaliation claims are not barred by the release because they relate to actions that occurred after the agreement was signed and that were not contemplated by the agreement. We agree that Littrell may challenge such actions by defendants. To establish a prima facie case of retaliation based on the First Amendment, a public employee plaintiff must show that (1) he engaged in protected speech, (2) his interest as a citizen in making such speech outweighs the employer's interest in promoting efficient public service and (3) his speech was a motivating factor in the adverse action taken against him. Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 801 (8th Cir. 2004); see Okruhlik v. Univ. of Ark., 395 F.3d 872, 878 (8th Cir. 2005) (noting the same analysis applies to First Amendment and Title VII retaliation claims). Whether speech was a motivating factor

---

[3] To the extent Littrell points to incidents that occurred after he signed the release, such evidence is immaterial to the issue whether he exercised free will at the time of signing.

"is a question of fact, but the sufficiency of the evidence to create an issue of fact is a question of law." de Llano v. Berglund, 282 F.3d 1031, 1036 (8th Cir. 2002).

Littrell alleges that his placement at Station 5 and defendants' failure to investigate his complaint of death threats were in retaliation for his reporting sexual activity at Station 19. However, Littrell has not set forth any evidence to demonstrate that his speech in November of 2002 motivated defendants to engage in their alleged retaliatory conduct in the summer of 2003. As to his placement at Station 5, he concedes that defendants made the decision based upon the animosity Littrell might experience from his co-workers at other stations. (See Appellant's Br. at 32.) Littrell had the same concern and has never requested placement at a station other than Station 5. As to defendants' refusal to investigate his complaints of death threats, Littrell relies only upon his allegation that the refusal was a result of the statements he made over six months before. Such a bare allegation is insufficient to survive summary judgment. See Howard, 363 F.3d at 801-02 (mere speculation insufficient to support First Amendment claim). For these reasons, we conclude that Littrell has failed to meet his prima facie burden on his First Amendment retaliation claims. Summary judgment was warranted.

## III.    CONCLUSION

For the reasons stated, we affirm the district court's grant of summary judgment in favor of defendants.

_____