486 F.Supp.2d 964 (2007)
Nancy MATTINGLY and Terry M. Mattingly, Plaintiffs,
v.
MEDTRONIC, INC., Defendant.
No. 4:06CV789 HEA.
United States District Court, E.D. Missouri, Eastern Division.
March 8, 2007.
Paul J. Passanante, Dawn M. Mefford, Simon and Passanante, PC, St. Louis, MO, for Plaintiffs.
Lori Gail Cohen, Greenberg Traurig LLP, Atlanta, GA, Robert Lawrence Purdy, Minneapolis, MN, Patrick Lysaught, *965 Baker and Sterchi, Kansas City, MO, for Defendant.

OPINION, MEMORANDUM AND ORDER
AUTREY, District Judge.
This matter is before the Court on defendant's Motion for Summary Judgment, [Doc. No. 31]. Plaintiffs oppose the motion. For the reasons set forth below, the Motion is granted in part and denied in part.

Facts and Background
Plaintiffs filed this wrongful death action under various theories of recovery seeking damages for an allegedly malfunctioning implantable cardiac defibrillator ("ICD") which was implanted in Terry Mattingly, Plaintiffs' decedent. Plaintiffs contend that the ICD which was implanted in decedent malfunctioned due to the failure/short-circuiting of the battery and/or high voltage capacitors of the ICD. Plaintiffs allege Terry Mattingly died as a result of the alleged malfunction. The remaining claims[1] are as follows: Count I: Negligence; Count II: Strict Liability: Design and Manufacturing Defects; Count III: Negligence Per Se; Count IV: Strict Liability: Failure to Warn; Count V: Negligent. Failure to Warn; Count VI: Breach of Implied Warranty; Count VII: Breach of Express Warranty; Count X: Punitive Damages.
Defendant moves for summary judgment arguing that each of Plaintiffs' state law claims are preempted by the Medical Device Amendments of 1976 ("MDA"), to the Food, Drug, and Cosmetic Act, ("FDCA"), 21 U.S.C. § 360k(a). The ICD implanted into Plaintiffs' decedent is a Class III medical device and has been approved by the U.S. Food and Drug Administration under its premarket approval ("PMA") process. Defendant argues that because the device has been approved under this process, Section 360k(a) preempts Plaintiffs' tort claims challenging design, labeling, manufacturing, safety, and effectiveness of FDA approved, Class III medical devises.

Standard of Review
The standards for summary judgment are well settled. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Littrell v. City of Kansas City, Mo., 459 F.3d 918, 921 (8th Cir.2006). The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
In determining whether summary judgment should be granted, the Court must view the facts and reasonable inferences from the facts in the light most favorable to the nonmoving party. Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings, but, by affidavit or other evidence, must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); Anderson, 477 *966 U.S. at 256, 106 S.Ct. 2505; Krenik v. Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

Discussion
The issue before the court is whether the federal law preempts the Missouri state law with respect to Plaintiffs' claims.[2] State law which conflicts with federal law is preempted under, the Supremacy Clause of the United States Constitution. U.S. Const., Art. VI, cl. 2. (The laws of the United States are "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.")
Preemption may occur when (1) Congress expressly preempts state regulation; (2) Congress intends federal law to "occupy the field"; or (3) state law conflicts with federal law. Crosby v. National Foreign Trade Council, 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000). The Eighth Circuit has recently stated:
A state law may be either expressly or impliedly preempted by federal law. Express preemption exists when a federal law explicitly prohibits state regulation in a particular field. Implied preemption arises when a federal law completely occupies the field of regulation so that by implication there is no room for state regulation and the coexistence of federal and state regulation is not possible. See Chapman v. Lab One, 390 F.3d 620, 624 (8th Cir.2004). Preemptive language in a statute is to be read narrowly, Cipollone v. Liggett Group, Inc., 505 U.S. 504, 518-19, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), and without clear congressional intent there is a general presumption against finding implied preemption. See Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996); Cliff v. Payco General American Credits, Inc., 363 F.3d 1113, 1125 (11th Cir. 2004); Springston v. Consolidated Rail Corp., 130 F.3d 241, 244 (6th Cir.1997). Implied preemption is therefore rarely found and only when the state law is in direct conflict with or frustrates the purposes of the federal law. See, e.g., CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 78-79, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987).
Missouri Board of Examiners v. Hearing Help Express, Inc., 447 F.3d 1033, 1035 (8th Cir.2006).
Whether the MDA preempts Missouri law depends upon the specific language used by Congress in drafting § 360k. Section 360k(a) of the MDA provides:
Except as provided in subsection (b) . . . no State . . . may establish or continue in effect with respect to a device intended for human use any requirement-(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.
21 U.S.C. § 360k(a).
In Brooks v. Howmedica Inc., 273 F.3d 785 (8th Cir.2001)(en banc), (cert. denied, *967 535 U.S. 1056, 122 S.Ct. 1914, 152 L.Ed.2d 823 (2002)), the Eighth Circuit considered preemption principles as they related to a product which had undergone the PMA process. The Court recognized the need for national uniformity in product regulation, one of the explicit goals of the MDA. Id. at 797. In its consideration of the Supreme Court's analysis of preemption in Medtronic, Inc. v. Lohr, 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996), the Court observed that a Class III device, which has undergone the MDA process, in contrast to the testing applicable to the device in Lohr, is subject to "rigorous testing for device safety." Brooks, 273 F.3d at 795. The Court concluded that the express preemption provision of Section 360k(a) applies to Class III devices because the FDA, through the PMA process has "issued a series of specific mandates regarding the label for" the device. Id. at 796. Thus, specific federal requirements are imposed on the manufacturers of such devices by the FDA.[3]
Specifically, with respect to the ICD implanted into the decedent, Defendant sets forth each step of the process involved: Defendant submitted detailed materials regarding the design, manufacture and labeling of the device to the FDA. The PMA application also included a description of the quality assurance program, acceptance and control of component and training of manufacturing personnel. Copies of the proposed labeling and product information manuals and specification sheets were also included in the application.
The FDA specifically approved Defendant's patient manual and product information manual. Ultimately, the FDA approved the design, manufacturing process and labeling of the device as described in Defendant's application. This approval has not been withdrawn, nor has there been any recall or other field action with respect to the device or any of its component parts.
Plaintiffs direct the Court's attention to the recently decided case of In Re: Medtronic, Inc., 465 F.Supp.2d 886 (D.Minn. 2006).[4] However, as Judge Rosenbaum recognized, the majority of the circuits have held that the PMA process imposes specific federal requirements, and therefore preempt state claims challenging devices which have undergone the PMA process. The device at issue in that multi-district *968 litigation is significantly different in that it involves redesign of the battery used in the device, which occurred subsequent to the PMA. No such modification is at issue in the matter before this Court.
Based on the preemption analysis articulated in Brooks, and the process under which the device was approved,[5] this Court must turn its focus on determining whether Plaintiffs' state common law claims would impose a requirement that is "different from, or in addition to," the relevant federal requirements. Plaintiffs' claims that the device's design and manufacturing were defective, and that Defendant failed to provide an adequate warning at the time of sale, would be based on the assertion that the manufacturer should have designed and manufactured the product differently and provided different warnings than those approved by the FBA. Such state-law claims would impose requirements that were different from, or in addition to, the applicable federal requirements and would be preempted. Brooks, 273 F.3d at 796-98. Significantly, devices which have been through the PMA process cannot be altered or modified without further approval by the FDA. See 21 C.F.R. § 814.39. Thus, a finding by the fact finder in this case that the device was defective would necessarily impose requirements on the device that are "different from, or in addition to," the requirements of the FDA. Plaintiffs' state claims are therefore preempted by the express preemption provision of Section 360k(a).
Moreover, Plaintiffs' warranty claims are also preempted. As Defendant correctly argues, the PMA process of the device requires an actual finding by the FDA that the device is both safe and effective. See 21 C.F.R. § 814.2(a). Thus, Plaintiffs contention that Defendant represented that the device was "safe and effective" and that it was not because of the alleged defect necessarily is seeking to impose requirements that are "different from or in addition to" those required by the FDA under the PMA process and are therefore preempted.
While Defendant argues that Plaintiffs' negligence per se claim is subject to preemption via a "fraud on the FDA" theory,[6] *969 in Brooks, the Eighth Circuit recognized that "a claim of failure to comply with FDA regulations is not preempted by the MDA, Lohr, 518 U.S. at 495, 116 S.Ct. 2240." Brooks, 273 F.3d at 798-99. Such a common law claim could parallel similar federal requirements such that the claim could survive a preemption challenge. Plaintiffs have, however presented no evidence that Defendant did not comply with all the FDA requirement. Plaintiffs argue that they have "alleged" such claims and that it is improper to consider this issue without discovery. Accordingly, the Court will allow limited discovery on this specific claim.

Conclusion
Based upon the foregoing analysis, Plaintiffs' claims, with exception of negligence per se are expressly preempted by Section 360k(a) of the MDA Defendant is entitled to judgment as a matter of law on those claims. At this stage of the litigation, judgment as to Plaintiffs' negligence per se claim is not appropriate, and therefore the motion is denied as to this claim.
Accordingly,
IT IS HEREBY ORDERED that defendant's Motion for Summary Judgment, [Doc. No. 31] is granted in part and denied in part.
A separate judgment will be entered upon the resolution of the remaining claim of negligence per se and punitive damages as claimed with respect to the negligence per se claim.
NOTES
[1] On September 12, 2006, the Court granted Defendant's motion to dismiss as it related to Counts VIII and IX. Although Plaintiffs, were given leave to file amended counts, Plaintiffs have not done so.
[2] Although Plaintiffs argue that this Motion is premature because the parties have not engaged in extensive discovery, the Court is unpersuaded that extensive additional discovery is necessary. The primary issue before the Court presents a question of law, thus factual discovery in this regard is of little or no consequence. There is no dispute as to the facts giving rise to this issue. Plaintiff's decedent received the device which Plaintiffs claim to be defective. The device was subject to the PMA process and was approved by the FDA. Furthermore, Plaintiffs, have not submitted, in accordance with Rule 56(f), any affidavits setting forth the reasons for their inability to file affidavits in opposition to Defendant's motion. The Court will, however, allow limited discovery with respect to Plaintiffs' negligence per se claim. See infra.
[3] The majority of other circuit courts have applied the above-described framework to conclude that common law tort actions as to PMA-approved devices, in contrast to § 510-cleared devices, are preempted by the MDA. See Riegel v. Medtronic, Inc., 451 F.3d 104, (2d Cir.2006); Horn v. Thoratec Corp., 376 F.3d 163 (3d Cir.2004); Martin v. Medtronic, Inc., 254 F.3d 573 (5th Cir.2001); Kemp v. Medtronic, Inc., 231 F.3d 216 (6th Cir.2000); Mitchell v. Collagen Corp., 126 F.3d 902 (7th Cir.1997), reaffirmed in McMullen v. Medtronic, Inc., 421 F.3d 482 (7th Cir.2005). These circuits have all concluded that (1) approval through the PMA process, unlike the § 510(k) process, amounts to a federal device-specific requirement, and (2) common law tort actions that allege liability as to a PMA-approved device, notwithstanding that device's compliance with the PMA-approved standards, would conflict with that federal device-specific requirement. See Riegel, 451 F.3d at 117; Horn, 376 F.3d at 170-179; Martin, 254 F.3d at 579-584; Kemp, 231 F.3d at 225-232; Mitchell, 126 F.3d at 911-914. McMullen, 421 F.3d at 486-488. Only the Eleventh Circuit has reached the opposite conclusion, holding that approval through the PMA process does not constitute a federal device-specific requirement. See Goodlin v. Medtronic, Inc., 167 F.3d 1367, 1376-77 (11th Cir.1999)
[4] Plaintiffs also urge the Court to follow the reasoning and holding in In re St. Jude Medical, Inc. Silzone Heart Valves Products Liability Litigation, 2004 WL 45503 (D.Minn.2004). However, In re St. Jude is not binding authority and the Court believes Brooks requires a different conclusion.
[5] The Court also observes that the FDA has set forth its position in an amicus curiae in Horn v. Thoratec, 376 F.3d 163 (3d Cir.2004):

State common law tort actions threaten the statutory framework for the regulation of medical devices, particularly with regard to FDA's review and approval of product labeling. State actions are not characterized by centralized expert evaluation of device regulatory issues. Instead, they encourage, and in fact require, lay judges and juries to second-guess the balancing of benefits and risks of a specific device to their intended patient population  the central role of FDA  sometimes on behalf of a single individual or group of individuals. That individualized redetermination of the benefits and risks of a product can result in relief  including the threat of significant damage awards or penalties  that creates pressure on manufacturers to add warnings that FDA has neither approved, nor found to be scientifically required, or withdrawal of FDA-approved products from the market in conflict with the agency's expert determination that such products are safe and effective. This situation can harm the public health by retarding research and development and by encouraging "defensive labeling" by manufacturers to avoid state liability, resulting in scientifically unsubstantiated warnings and underutilization of beneficial treatments.
FDA Letter Brief filed as amicus curiae. See Noe v. Henderson, 456 F.3d 868, 870 (8th Cir.2006).
[6] Defendant directs the Court's attention to the findings in the Sixth Circuit regarding "fraud on the FDA." "Granting leave to amend on count IV would be futile because that count is a disguised fraud on the FDA claim." The Supreme Court and this court held that federal law preempted such claims. See Buckman, 531 U.S. at 347-48, 121 S.Ct. 1012 (explaining that the usual presumption against preemption does not apply where the field of law is inherently federal and stating that "the relationship between a federal agency and the entity it regulates is inherently federal in character because the relationship originates from, is governed by, and terminates according to federal law"); id. at 349 n. 4, 121 S.Ct. 1012 ("The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the medical device provisions: `[A]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States.'") (quoting 21 U.S.C. § 337(a)); Kemp, 231 F.3d at 236. Cupek v. Medtronic, Inc. 405 F.3d 421, 424 (6th Cir. 2005). Under Brooks, however, the Court is of the opinion that this claim is would not fall within those actions where implied preemption applies.