# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1696

_____

| | | |
|---|---|---|
| Ruth E. Parks, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| Arlon L. Parks, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Appeal from the United States District |
| v. | * | Court for the Eastern District of |
| | * | Arkansas. |
| City of Horseshoe Bend, Arkansas; | * | |
| Robert Spear, Individually and as the | * | |
| Mayor of the City of Horseshoe Bend, | * | |
| Arkansas; Fred Mitchell, Jr., | * | |
| Individually, and as Chief of Police of | * | |
| the City of Horseshoe Bend, Arkansas; | * | |
| Janice Fae Mitchell; David Perkins; | * | |
| Charles V. Simmons, | * | |
| | * | |
| Defendants-Appellees. | * | |

_____

Submitted: October 18, 2006
Filed: March 15, 2007

_____

Before MELLOY, BENTON, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Ruth E. Parks appeals from the district court's[1] grant of summary judgment in her 42 U.S.C. § 1983 claim in favor of the City of Horseshoe Bend, Arkansas; Robert Spear, the Mayor of the City of Horseshoe Bend; Fred Mitchell, Jr., the Chief of Police of the City of Horseshoe Bend; Janice Fae Mitchell; David Perkins; and Charles V. Simmons (collectively, the defendants).[2] We affirm.

I.    Background

This case arises from difficulties between two elected officials of the City of Horseshoe Bend, Arkansas. Parks was recorder/treasurer of Horseshoe Bend, taking office in January 1997. Spear served on the city council from January 1997 through January 1999, and then, starting in January 1999, he began a four-year term as mayor. While the relationship between the two elected officials began well, a rift developed after a dispute over the city's contract for ambulance services. Parks expressed disagreement with the mayor on other policy issues, as well.

Shortly after the ambulance service disagreement, one of Mayor Spear's friends, David Perkins, began to drive by Parks's home at a high rate of speed, honking his horn. Parks surmises that Mayor Spear asked or directed Perkins to undertake this annoying practice. Parks reported the incidents to Mayor Spear and Police Chief Mitchell and she claims they were slow to respond to her concerns. Police Chief Mitchell had Parks file an affidavit in support of an arrest warrant for Perkins and Perkins was arrested for harassment. The state court entered a no contact

---

[1] The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

[2] In the district court, Parks also pursued a claim under 18 U.S.C. § 2520, alleging the defendants illegally recorded her conversation in violation of federal wiretapping laws. The district court granted summary judgment in favor of the defendants. Parks did not appeal this decision.

order prohibiting Perkins from continuing the conduct that had vexed Parks. Nonetheless, Perkins continued to drive past Parks's home, honking his horn.

Perkins was tried in state court on the harassment charge; the state court also considered whether Perkins violated the no contact order. At trial, Parks and her husband, Arlon Parks (Mr. Parks), testified. During cross examination, Parks was asked if she believed in unidentified flying objects (UFOs), whether she had ever seen a UFO, and whether she had been abducted by a UFO. Parks testified she believed in UFOs and had seen them in the past. She stated she had never been abducted by aliens. The defense attorney asked Mr. Parks similar questions. Mr. Parks testified he believed in UFOs, but had never seen one. He denied he had been abducted by aliens, but stated his wife had been abducted by aliens, commenting that she had scars to prove it.

The trial court found Perkins not guilty of harassment. The court concluded Perkins had violated the no contact order and held Perkins in contempt of court.

The local newspaper, *The News*, reported on the Perkins trial. Defendant Janice Fae Mitchell (Ms. Mitchell), the wife of Police Chief Mitchell and a member of *The News* staff, authored an article about the Perkins trial that was published in the *The News*. In the article, Ms. Mitchell recounted the testimony regarding UFOs. Specifically, the article noted that both Ruth and Arlon Parks testified that they believe in UFOs and have seen them in the past. It said they each denied having been abducted by aliens, but noted Mr. Parks's testimony that he believed his wife had been abducted by aliens. Parks does not challenge the accuracy of the article's account of the UFO testimony, but instead claims the article, and others written by Ms. Mitchell about the Perkins controversy, were defamatory and designed to make her look foolish.

During the Perkins controversy, *The News* published a letter to the editor written by Parks. Underneath the letter, *The News* ran a cartoon arguably lampooning Parks. Parks alleges the cartoon, which was published without attribution, was drawn by Police Chief Mitchell, although she provides no factual basis for this assertion.

Subsequent to the Perkins controversy, Parks ran for re-election for recorder/treasurer. Two candidates ran against her: Charles "Chuck" Simmons and Ann Shaw. Parks alleges Mayor Spear selected Simmons to run against her to silence her. Simmons, then the court clerk for the City of Horseshoe Bend, won the election, with Shaw receiving the second highest number of votes.

Parks[3] filed suit pursuant to 42 U.S.C. § 1983, alleging the defendants violated her constitutional rights by conspiring to prevent her re-election in retaliation for her vocal opposition to Mayor Spear. Parks claims the events described above were part of the alleged conspiracy.

The district court granted the defendants' motion for summary judgment. In making its decision, the district court found Parks arguably was deprived of a fundamental right because she presented evidence that Mayor Spear and Police Chief Mitchell foiled her re-election bid due to Parks's opposition to the mayor. The court held, however, that Parks failed to show Mayor Spear or Police Chief Mitchell acted under color of law as required to sustain a claim under § 1983.

---

[3] Mr. Parks was originally a plaintiff below. Mr. Parks did not respond to the defendants' summary judgment motion and the claims alleged by Mr. Parks were dismissed with prejudice. Mr. Parks did not appeal.

## II.    Discussion

We review a grant of summary judgment de novo. Cooksey v. Boyer, 289 F.3d 513, 515 (8th Cir. 2002). Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, we consider the evidence in the light most favorable to the non-moving party. Samuelson v. City of New Ulm, 455 F.3d 871, 875 (8th Cir. 2006). However, we will not resort to speculation. Johnson v. Ready Mixed Concrete Co., 424 F.3d 806, 810 (8th Cir. 2005). To survive a motion for summary judgment, "a nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." Naucke v. City of Park Hills, 284 F.3d 923, 927 (8th Cir. 2002) (internal quotation omitted). "[U]nder § 1983, the plaintiff must raise a genuine issue of material fact as to whether (1) the defendants acted under color of state law, and (2) the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." Samuelson, 455 F.3d at 875 (internal quotation omitted). An issue is genuine "if the evidence is such that it could cause a reasonable jury to return a verdict for either party." Littrell v. City of Kansas City, 459 F.3d 918, 921 (8th Cir. 2006).

Applying these standards to the instant case, we conclude Parks has failed to raise a genuine issue of material fact as to either of the essential elements of a § 1983 claim. First, Parks has not presented any evidence that she was deprived of a constitutionally protected right. See, e.g., Cooksey, 289 F.3d at 516 (upholding summary judgment against a plaintiff in a § 1983 suit where no constitutional violation occurred). There is no constitutional right to be elected to a particular office. While "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively," are fundamental rights, there is not an equivalent right to be elected. Williams v. Rhodes, 393 U.S. 23, 30-34 (1968) (holding Ohio's election laws

resulted in a denial of equal protection). Parks cannot base a claim of constitutional injury solely upon the loss of the election for recorder/treasurer.

Further, while retaliation against an individual based upon the exercise of her First Amendment rights can form the basis of § 1983 liability, such a claim requires adverse action by a government official that causes an injury to the plaintiff. Naucke, 284 F.3d at 927-28. Parks fails to put forth evidence establishing a link between the alleged actions taken by the defendants and her electoral defeat. Because the decision not to re-elect Parks as recorder/treasurer was made by the voters of Horseshoe Bend, the defendants cannot be said to have *caused* Parks's alleged injury. Thus, even if we assume Parks's speech opposing the mayor in policy disputes was protected by the First Amendment[4] and the defendants acted in some way against Parks because of those statements, the defendants' actions did not cause Parks to suffer a deprivation of a constitutional right.

Second, Parks has failed to demonstrate a genuine issue as to whether the defendants acted under color of state law. Even if one were to assume, as the district court did, that Parks suffered a constitutional deprivation, there is no evidence that the conduct of Police Chief Mitchell or Mayor Spear was sustained by the authority of their offices, or that their actions were abuses of their official duties. Nor has Parks provided any factual basis, beyond mere speculation, that the other individual defendants were acting at the direction of Chief Mitchell or Mayor Spears when they opposed Parks.

---

[4] We note that under Garcetti v. Ceballos, 126 S. Ct. 1951 (2006), Parks's speech would not be protected under the First Amendment if it was made in the course of her official duties. See, e.g., McGee v. Pub. Water Supply, Dist. #2 of Jefferson Co., Mo., 471 F.3d 918, 920-21 (8th Cir. 2006) (upholding summary judgment in § 1983 suit based upon alleged retaliation where the plaintiff government employee's speech was made pursuant to his official responsibilities).

This case, at its core, is a dispute fueled by the rough and tumble of local politics.  We have thoroughly reviewed all of Parks's arguments challenging the district court's grant of summary judgment and find them without merit.  "We are loathe to interpret section 1983 to proscribe what we thus understand to be traditional political activity."  Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607, 615 (8th Cir. 1980).

III.    Conclusion

For the reasons stated, we affirm the district court's grant of summary judgment in favor of the defendants.

_____