NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4241
_____

EDWARD KOREN,
                                        Appellant

v.

FRANK NOONAN; MARIA FINN
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5-12-cv-01586)
District Judge: Honorable Cynthia M. Rufe
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 11, 2014

Before: SMITH, VANASKIE, and SLOVITER, *Circuit Judges*

(Filed September 16, 2014)
_____

OPINION
_____

VANASKIE, *Circuit Judge*.

Appellant Edward Koren, a former Pennsylvania State Trooper, brings this action

under 42 U.S.C. § 1983 against Appellees Frank Noonan and Maria Finn, employees of

the Pennsylvania State Police.  Koren alleges that in 2011, while he was mounting an

ultimately unsuccessful run for political office, Finn conveyed information to the media

which implied that Koren had engaged in serious misconduct as a State Trooper. Koren alleges that this constituted an illegal retaliation for the exercise of his First Amendment rights and violated his right to privacy. Because we find that these and Koren's other constitutional claims are insufficient as a matter of law, we will affirm the District Court's dismissal of Koren's complaint and its subsequent order denying reconsideration.

I.

Koren began his tenure as a Trooper with the Pennsylvania State Police in 1978, eventually holding several regional leadership positions within the organization.[1] Upon his retirement in 2005, however, he did not receive the accolade commonly known as an "honorable discharge." He contends that at that time, the State Police had no standard policy governing when a trooper retired with an honorable discharge—instead, that designation was awarded solely at the discretion of the organization's Commissioner, Appellee Frank Noonan.

In 2011, several years after his retirement, Koren ran as a Democrat for the office of District Attorney of Lehigh County. On October 26, 2011, during the waning days of the campaign, the Allentown Morning Call published an article quoting Appellee Maria Finn, a spokesperson for the State Police, as stating that "an honorable discharge is generally given when a trooper 'did not engage in serious misconduct while employed' by state police," and "the 'vast majority' of troopers retire with an honorable discharge."

---

[1] Our recitation of the factual background is derived from Koren's Complaint.

(App. 27.) Koren contends that these statements falsely implied that Koren himself had engaged in serious misconduct as a trooper. Koren also notes his belief that other troopers were disciplined for serious misconduct and yet still received honorable discharges upon retirement. The State Police declined to release Koren's personnel file in response to subsequent requests from the media.

Koren alleges that Finn, at Noonan's behest, intentionally lied regarding the State Police's policy as part of a scheme to derail Koren's run for District Attorney. By way of background, Koren's Complaint notes that Noonan is a "political appointee" of Pennsylvania Governor Tom Corbett, a Republican. (App. 26.) Corbett, according to Koren, "had a close personal relationship" with incumbent Lehigh County District Attorney Jim Martin, a fellow Republican. (App. 27.) The Complaint leaves to its audience the satisfaction of connecting the dots.

Shortly after Koren lost the election, he received a letter dated November 28, 2011 from Noonan "indicat[ing] that the Pennsylvania State Police, acting under [Noonan's] discretion, conducted a 'second' award determination, in secret, and in private, without notice to [Koren], and as a result of this recent secret review, [Koren] was again denied an honorable discharge." (App. 30.)

In March 2012, Koren filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Count One asserts a First Amendment retaliation claim, on the theory that Finn, acting at Noonan's direction, lied by implication about Koren's service record to punish him for running against the incumbent Republican District Attorney. Count Two asserts that

3

Appellees violated Koren's right to privacy by withholding from the press the accolades contained within his service file, and simultaneously implying that the same file contained evidence of serious conduct. Count Three avers that Appellees committed a due process violation by conducting a "secret" and "private" second review of his personnel file before again denying him an honorable discharge. Count Four alleges that Appellees committed an equal protection violation by denying an honorable discharge to Koren, who possessed an exemplary service record, and yet granting that accolade to other troopers who were actually guilty of "serious misconduct." Finally, Count Five asserts a claim of willful misconduct under Pennsylvania state law. Koren seeks compensation for lost earnings, lost benefits, mental anguish, and pain and suffering. He also seeks punitive damages.

Appellees moved to dismiss the Complaint for failure to state a claim. In a Memorandum and Order entered February 21, 2013, the District Court granted the motion to dismiss. Koren filed a motion for reconsideration, construed by the District Court as a motion under Rule 59(e), which essentially reiterated his arguments in opposition to Appellees' motion to dismiss. The District Court denied that motion in a Memorandum and Order entered October 4, 2013. Koren filed a timely notice of appeal from that order.

4

II.

The District Court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction over the District Court's final order pursuant to 28 U.S.C. § 1291.

We exercise plenary review over a district court's decision granting a motion to dismiss under Rule 12(b)(6). *See Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 83 (3d Cir. 2011).[2] We accept as true all facts set forth in the complaint, and draw all reasonable inferences from such allegations in favor of the complainant. *Id.* at 84.

III.

A.

Count One of Koren's Complaint alleges a First Amendment retaliation claim. To establish a First Amendment retaliation claim, Koren must prove three elements: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v.*

---

[2] Koren directly challenges the District Court's order of October 4, 2013, over which we exercise plenary review because it contains only conclusions of law. *See Addie v. Kjaer*, 737 F.3d 854, 867 (3d Cir. 2013). Functionally, however, we also review the District Court's order of February 21, 2013 because "[a] timely appeal from an order denying a Rule 59 motion to alter or amend brings up the underlying judgment for review." *Quality Prefabrication, Inc. v. Daniel J. Keating Co.*, 675 F.2d 77, 78 (3d Cir. 1982) (citing Fed. R. App. P. 4(a)(4)). Thus, because both Orders are subject to the same standard of review, and present the same legal issues, we will not analyze them separately. *See Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013).

*Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citation omitted). We assume for purposes of this analysis that the first and third elements of Koren's claim are satisfied, i.e., that Appellees, acting in their capacity as public officials, made false allegations regarding Koren's service history with the State Police in response to Koren's exercise of his First Amendment rights—namely, his decision to run against the incumbent District Attorney of Lehigh County.

At issue here is the second element, which requires evidence that the plaintiff's First Amendment rights were in fact adversely affected by the retaliatory conduct in question. We consider this "a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, *and the nature of the retaliatory acts*[,]" which must "be more than *de minimis* or trivial." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (quoting *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 686 (4th Cir. 2000)). Writing in the context of retaliatory action allegedly taken by a public employer against an employee based on that employee's protected expression of a critical viewpoint regarding workplace conditions, we have identified this threshold as "very low." *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006). Even so, a plaintiff must plead more than mere "criticism, false accusations, or verbal reprimands." *Brennan*, 350 F.3d at 419 (citing *Suarez*, 202 F.3d at 686). And in the political arena, courts have consistently rejected First Amendment retaliation claims based upon assertions of purportedly false reports or criticism. *See, e.g.*, *Parks v. City of Horseshoe Bend*, 480 F.3d 837, 840 (8th Cir. 2007) (affirming grant

6

of summary judgment where retaliation claim was predicated upon "a dispute fueled by the rough and tumble of local politics"); *Colson v. Grohman*, 174 F.3d 498, 514 (5th Cir. 1999) ("[T]he defendants' allegedly retaliatory crusade amounted to no more than the sort of steady stream of false accusations and vehement criticism that any politician must expect to endure."); *Ollman v. Evans*, 750 F.2d 970, 1002 (D.C. Cir. 1984) (en banc) (Bork, J., concurring) ("Where politics and ideas about politics contend, there is a [F]irst [A]mendment arena. The individual who deliberately enters that arena must expect that the debate will sometimes be rough and personal.").

Here, Koren contends that Appellees, by thinly veiled innuendo, smeared his unblemished professional record in an attempt to derail his ongoing candidacy. The question here, however, is not whether Appellees' remarks were defamatory—it is whether they would have deterred "a person of ordinary firmness," *Thomas*, 463 F.3d at 296, from pursuing a similar run for office. We conclude that Appellees' conduct, which involved no "threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow," *Suarez*, 202 F.3d at 687, would not dissuade a person of ordinary firmness from seeking political office.

Accordingly, because Koren's allegations fail to establish that his First Amendment rights were in fact adversely affected by the allegedly retaliatory conduct at issue, we will affirm the District Court's orders of February 21, 2013 and October 4, 2013 insofar as they pertain to Count One of the Complaint.

7

B.

In Count Two of the Complaint, Koren alleges that Appellees violated his constitutional right to privacy by implying that Koren was guilty of serious misconduct as a Trooper and yet withholding from the media the "accolades and promotions" contained within his personnel file, thereby casting him "in a false light." (App. 29.) The Supreme Court has recognized that the Constitution "protects 'the individual interest in avoiding disclosure of personal matters[,]'" *Doe v. Delie*, 257 F.3d 309, 315 (3d Cir. 2001) (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977)), such as medical records, *see Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 206 (3d Cir. 1991).

We need not address whether the contents of Koren's personnel file constitute the sort of information that is protected from unwanted disclosure by public officials. The root of Koren's case is that public officials did *not* disclose information from his personnel file, and instead impugned his reputation by false innuendo. Indeed, he concedes that Appellees, at most, "pretend[ed] to speak about his personnel file . . . ." Appellant's Br. at 18. It is thus undisputed that no personal information was disclosed. Consequently, like the District Court, we perceive no basis on which these allegations state a plausible claim for relief on a "right to privacy" theory. We will affirm the District Court's orders of February 21, 2013 and October 4, 2013 insofar as they pertain to Count Two.

C.

Count Three of the Complaint alleges that Appellees violated Koren's right to procedural due process under the Fourteenth Amendment by conducting, "without notice," a "secret and private second review" of his personnel file.  (App. 30.)  Count Four of the Complaint alleges that Appellees violated Koren's right to equal protection under the Fourteenth Amendment by granting honorable discharges to other service members while denying the same to Koren, which he characterizes as a matter of "selective prosecution."  Appellant's Br. at 21.

Appellees argue, and the District Court concluded, that these claims were barred by Pennsylvania's two-year statute of limitations, given that Koren was initially denied an honorable discharge without a hearing at the time of his retirement in 2005.[3]  Because Koren does not confront the limitations issue in his initial brief before this Court, and did not avail himself of the opportunity to file a reply brief, we are left with only one side of the argument on the matter—and that side is persuasive.  The Supreme Court has instructed that a claim under § 1983 accrues "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (internal citations and quotation marks omitted).  Here, any substantive or procedural constitutional violation occasioned by Noonan's denial of an

---

[3] Because all § 1983 claims are characterized for statute-of-limitations purposes as actions to recover damages for injuries to the person, *Wallace v. Kato*, 549 U.S. 384, 387 (2007), the applicable term here is Pennsylvania's two-year limitations period governing tort claims, *see* 42 Pa. Cons. Stat. Ann. § 5524(7).

9

honorable discharge to Koren occurred in 2005 and was known to Koren immediately.[4]

Those violations were not resuscitated for limitations purposes by Appellees' decision in 2011 to reconsider and ultimately reaffirm the status of Koren's discharge. *See Cowell v. Palmer Twp.*, 263 F.3d 286, 293 (3d Cir. 2001) (holding that public official's refusal to undo or correct alleged harm does not toll the statute of limitations).

Consequently, we will affirm the District Court's orders of February 21, 2013 and October 4, 2013 insofar as they pertain to Counts Three and Four of the Complaint.

D.

The parties agree that the District Court, having dismissed all of Koren's claims arising under federal law, properly dismissed without prejudice Count Five of the Complaint, which alleged a violation of state law. (App. 14–15.)  Because we will affirm the District Court's orders of February 21, 2013 and October 4, 2013 with respect to dismissal of the federal claims, we will likewise affirm those orders insofar as they pertain to Koren's state-law claim in Count Five.

---

[4] The District Court concluded that Koren's due process claim may not have accrued until the Commonwealth Court of Pennsylvania issued a decision pertaining to the award of honorable discharges in 2009. (App. 21–22 (citing *Commonwealth v. Pa. State Trooper Ass'n*, 979 A.2d 442, 445–46 (Commw. Ct. 2009)).)  Because Koren's claim would be barred regardless, and because Koren makes no argument to us on that point, we will not address it.

IV.

For the foregoing reasons, we will affirm both the District Court's order of February 21, 2013 dismissing Koren's Complaint and its order of October 4, 2013 denying reconsideration.[5]

---

[5] In light of our conclusions above, we need not address whether Appellees are entitled to qualified immunity and whether Koren could overcome that immunity.